IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE ELECTRONIC DEVICE AS FOLLOWS:<br><br>A MOTOROLA MOTO G PLAY, IMEI # 359088224954539, CONNECTED TO XFINITY MOBILE CELLULAR SERVICE, CURRENTLY LOCATED IN THE EVIDENCE ROOM OF THE SANDY CITY POLICE DEPARTMENT, 10000 CENTENNIAL PARKWAY, SANDY, UTAH 84070. | Case No. 2:24mj928 JCB |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, Kevin Worwood, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. I assert that there is probable cause to believe that the electronically stored information on this device contains evidence of the crimes of Possession of Methamphetamine with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1), Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A), and Felon in Possession of a Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1).

2. I am a Detective with the Sandy City Police Department (SCPD), and have been since May 2016. I am currently assigned as a Task Force Officer with the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in the Salt Lake City, Utah Field Office. I am also currently assigned to the Salt Lake County Metro Gang Unit (MGU). I have conducted several investigations regarding the use of cellular phones and electronic devices used in illegal activities such as drug trafficking, firearms trafficking, the unlawful possession of firearms, and the communications surrounding various criminal offenses.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a Motorola Moto G Play, IMEI number 359088224954539 with an unknown serial number, connected to the Xfinity Mobile cellular service (hereinafter "Device One"). Device One has a blue back with the Motorola logo in the top portion. Device One is also found to be in a gray rubber Ghostek branded protective case. Device One is currently located at the SCPD Evidence Room at 10000 Centennial Parkway in Sandy, Utah.

5. The applied-for warrant would authorize the forensic examination of Device One for the purpose of identifying and seizing evidence of the crimes outlined above in the form of electronically stored data more particularly described in Attachment B.

**PROBABLE CAUSE**

6.      On January 27, 2024, Officer J. Slaugh with SCPD stopped a vehicle for a traffic violation. This vehicle was being driven by STANLEY RAY PERRY. There was one other occupant in the vehicle, located in the front passenger's seat. PERRY is currently on parole and under the supervision of Adult Probation and Parole (AP&P) with the Utah Department of Corrections. PERRY's parole agent was contacted via telephone and advised of the traffic stop. At that time, the parole agent authorized a search of PERRY's vehicle per the conditions of PERRY's parole agreement with AP&P.

7.      During a subsequent search of the vehicle, Officer E. Rippetoe with SCPD found a red first-aid bag and a black handgun in a green holster under the driver seat where PERRY was seated when driving the vehicle. Inside of the bag, Officer Rippetoe located a plastic container and two baggies. One of the baggies contained a large amount of a white crystal-like substance that later field tested positive for methamphetamine and weighed 26.37 grams. The other plastic baggie contained a green leafy substance that later field tested positive for marijuana and weighed 12.03 grams. There were also several empty/unused plastic baggies, which I know from my training and experience, are often utilized for splitting larger amounts of illegal narcotics into smaller weighed-out portions for distribution. Officer Rippetoe also located a green pistol holster that contained an American Tactical .45 caliber semi-automatic handgun (serial #08G00833) with 7 rounds of ammunition in the magazine.

8.      Officer Slaugh took PERRY into custody and searched him incident to arrest. During this search, a digital scale was discovered in PERRY's left front pant pocket, which I

know through my training and experience is often utilized for splitting larger amounts of illegal narcotics into smaller weighed-out portions for distribution.

9. While searching PERRY's vehicle, SCPD officers discovered two mobile phones. PERRY identified one mobile phone as his, namely Device One, and he unlocked it to provide the contact information for his AP&P officer to SCPD. A second mobile phone was located between the front driver's and passenger's seats of the vehicle. That phone had a text message displayed on the screen about not being paid yet. Both PERRY and the other occupant of the vehicle denied ownership of that phone. While Officer Slaugh was packaging the evidence, the second mobile phone found in the vehicle began ringing, showing that it had current cellular service on it.

10. Officer Rippetoe gave PERRY notice of his constitutional rights via a *Miranda* warning, after which PERRY agreed to speak with law enforcement. During this interview, PERRY admitted to selling narcotics from his vehicle. Specifically, he stated that he was selling methamphetamine at $70 for 1/16 of an ounce. PERRY admitted that there was around an ounce of methamphetamine and that he was selling it to get money. PERRY also admitted to selling methamphetamine two days prior to the traffic stop. PERRY stated that he will get between a couple ounces and a quarter pound every time he re-ups. PERRY also admitted post-Miranda that he had the firearm in the vehicle for protection and had paid around $300 for it.

11. Law enforcement reviewed PERRY's criminal history, which shows that he is a convicted felon, and that it is therefore unlawful for him to possess a firearm or ammunition.

12. The following photograph was taken by SCPD, and it depicts some of the evidence seized incident to or following PERRY's arrest, including Device One:



13.     Device One along with the second mobile phone found inside the vehicle are currently in the lawful possession of SCPD. These items were seized as evidence because it is believed that they were likely being used in conjunction with narcotics trafficking based upon where they were found, the text message and phone ringing during the traffic stop, the drugs, scale, baggies, and other evidence seized at the scene, as well as PERRY's post-*Miranda* statements about selling narcotics.

14.     I know through my training and experience that narcotics traffickers conduct a significant amount of their business using mobile phone and smartphone devices, including the following: various communications to direct, supervise, and coordinate their activities such as phone calls, instant messages, photo messages, text messages, emails, and other applications used to communicate discretely; maintain records detailing their holdings and business dealings, such as contact information, addresses records, receipts, notes, ledgers, and other information

relating to the procurement, distribution, storage, and transportation of controlled substances and weapons; take or cause to be taken photographs and/or videos of themselves, their associates, their drug proceeds, assets derived from the sale of controlled substances, and/or their narcotics trafficking activities; and utilize phone applications to conduct counter surveillance of law enforcement authorities.

15. In this case, PERRY was in possession of and acknowledged ownership of Device One, which contained the contact information for his AP&P officer. A second mobile phone was located at or near the center console of the vehicle, and this device was active (ringing and had a text message about payment) at the time of the traffic stop. In my training and experience, it is consistent with narcotics trafficking to maintain a personal mobile phone for long-term usage and a temporary mobile phone for short-term usage for illicit business. In my training and experience, narcotics traffickers will also have illicit business on their personal device because it is maintained long-term, as opposed to temporary devices that they frequently "drop" or change as needed. This knowledge and experience, in conjunction with PERRY's statements admitting to narcotics trafficking, gives me reason to believe there is evidence of narcotics trafficking on both mobile phones.

16. Device One is currently in storage at the SCPD Evidence Room at 10000 Centennial Parkway in Sandy, Utah. In my training and experience, I know that Device One has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when Device One first came into the possession of the SCPD.

**TECHNICAL TERMS**

17. Based on your affiant's training and experience, your affiant uses the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same state.

18. Based on your affiant's training, experience, and research, I know that Device One has capabilities that allow it to serve as **a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.** In your affiant's training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on your affiant's knowledge, training, and experience, your affiant knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a device behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. Your affiant knows that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a

means of communicating with those assisting with the commission of the crime. The electronic device is also likely to be a storage medium for evidence of crime. From your affiant's training and experience, your affiant believes that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your affiant is applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, your affiant submits there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

23. Your affiant submits that this affidavit and asserts there is probable cause for a search warrant authorizing the examination of Device One, more particularly described in Attachment A, for evidence of the crimes outlined above, which is more particularly described in Attachment B.

        Respectfully submitted,

        _____
        Kevin Worwood
        Detective, Sandy Police Department
        Task Force Officer, Bureau of Alcohol,
        Tobacco, Firearms and Explosives

Subscribed and sworn to before me
on September 18, 2024:

_____
JARED BENNETT
UNITED STATES MAGISTRATE JUDGE

11